3:22-MJ-2103 FILED

DEC 29 2022

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

**AFFIDAVIT**

I, Inspector J. Wallace Bowden, depose and say under penalty of perjury:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the electronic devices described in Attachment A, for the things described in Attachment B. The devices to be searched include the following cellular telephone, which was collected from **TESSA HINES**:

An Apple iPhone (the **"SUBJECT DEVICE"**), white in color, which was in the possession of Tessa Hines at the time of her arrest on December 10, 2021.

The **SUBJECT DEVICE** is currently being held at the United States Postal Inspection Service Office in Knoxville, TN.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information I obtained from various law enforcement agents and others. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of the investigation. Rather, I have set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested search warrant. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

3. I am a Postal Inspector with the United States Postal Inspection Service, and I have been employed in that capacity since January 1994. During my 27 years as a Postal

Inspector, I have led, conducted, and/or participated in criminal investigations of matters and offenses such as mail fraud, prohibited mailings of controlled substances, violent crimes, and identity theft.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that evidence, instrumentalities and fruits of violations of 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. §1349 (conspiracy to commit mail fraud), committed by **TESSA HINES** will be found in the **SUBJECT DEVICE.**

## PROBABLE CAUSE

5. The DEFENDANT is presently facing federal charges for violations of 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. §1349 (conspiracy to commit mail fraud), based upon criminal complaint issued by this Court in the matter numbered 3:22-MJ-2045-JEM (as to defendant HINES) which is attached hereto as Attachment C, and incorporated herein by reference. I was the affiant for the affidavit provided to the Court in support of the issuance of the complaint.

6. As more thoroughly discussed in Attachment C, HINES accompanied co-defendants Marklyn Antonio FORRESTER and Maurice Armani BROWN on the October 21, 2021 trip to Lenoir City, where they shared a hotel room that evening. The following day, on October 22, 2021, HINES remained behind at the hotel while FORRESTER and BROWN drove to the Lenoir City Walmart for the meeting between victim Sandra Cruze and one or more additional co-conspirators. In the course of this investigation, I have learned that the co-conspirators were in cell phone communication with certain other individuals involved in the

conspiracy, as further described in Attachment C. In addition, I have recently been informed that HINES was on the telephone with FORRESTER and/or BROWN at the time they were apprehended by police on October 22, 2021. Because HINES had the SUBJECT DEVICE in her possession on October 22, 2021, it is likely that the device may have evidence relevant to the mail fraud conspiracy.

**SPECIFICS OF SEARCH AND SEIZURE OF CELL PHONES**

**Mobile Devices**

7. Mobile devices including cellular telephones and tablet computers, commonly contain live and deleted user attribution data including, but not limited to, user accounts, e-mail accounts, passwords, PIN codes, patterns, account names, user names, screen names, remote data storage accounts, documents, files, pictures, videos, metadata, or other information and evidence that may demonstrate attribution to a particular user or users. I know from my training and experience that mobile devices can be connected to a cellular network (Mobile Network Operator) or to the Internet via Wi-Fi. This connectivity allows users to make and receive calls, send and receive text messages, take and send pictures and videos, communicate using third party applications "apps," access social media, navigate using mapping and navigation apps and access the World Wide Web. I know that videos and images can be e-mailed, sent through messaging systems such as SMS (Short Message Service) and MMS (Multi-media Message Service) messages and other forms of communication located within specialized applications. I know when mobile devices are examined it is common to identify e-mail addresses and other on-line account details which could contain evidence of distribution of images, videos, text

communication, file sharing, and remote cloud storage. I also know that metadata associated with these images and videos may include details such as the camera used, date and time the image or video were recorded, and GPS location information.

8. Mobile device users can install applications that can be used to hide and even encrypt data and conceal specific data from detection. These applications are generally accessed by covert means known by the user and often require a PIN code, pattern, password, or a unique biometric feature such as a fingerprint. I also know that users sometimes hide contraband images and other content in other applications and folders such as calendars and games to avoid detection. For these reasons, I know it is necessary to search all data on the device.

9. Mobile devices commonly keep contact lists containing names and phone numbers. I know these names and numbers can be useful in identifying possible victims, associates, suspects, co-conspirators, and other relevant individuals.

10. Mobile devices commonly have Global Positioning System (GPS) and other similar geo-location sensors. These sensors may track the historical location of the device geographically and provide a historical record. I also know that these systems leave log files. I know that these log files can be recovered and used to locate a device's geographic historical location on a specific date and time. I know that this information could be used to include or exclude the user from involvement with the planning, execution, and potential post crime cover-up activities.

11. Mobile devices may contain a Subscriber Identity Module (SIM cards) that may contain data associated with the device and user attribution such as contact lists, call logs, SMS

messages, telephone number, and other user data commonly found in cellular telephones. This data can be recovered forensically.

12. Mobile devices may contain removable media cards. These cards are commonly referred to as SD cards or MicroSD cards. These cards can be used to store additional data associated with the mobile device including photographic images, videos, text files and other digital data. I know that additional data contained within these files may also provide dates, times, locations, settings, devices used, and user attribution information. This data can be recovered forensically.

13. Mobile devices can be used to delete, create, share, and store files and other data including, but not limited to, documents, photographs, videos, electronic mail, search history, financial transactions, and other relevant live and deleted user information. I also know that such devices can be used to communicate and instantly share information with others and that data can be transferred between various devices – wirelessly and by connected cables.

14. If these items are not seized and isolated from network connectivity in a timely manner, potential inculpatory and exculpatory evidence may be destroyed, transferred, encrypted, modified, or otherwise lost forever. I know that data recovered from mobile devices can be used to corroborate or refute data recovered or obtained from other mobile devices and/or from service provider records.

15. It is necessary to search live and deleted data recovered from digital devices from the time when the device was first used through the time when the device was seized. This is specifically necessary to establish associations between a particular device and associated

applications and files to a particular user (or users). This scope of time is necessary to identify potential inculpatory and exculpatory evidence during the planning, execution, and post event activities of potential criminal activity. These activities may include communication, contact, calendar entries, pictures, videos, and location information (including GPS, navigation, and maps). This scope of time is also necessary to determine accurate device date and time settings, including time zone changes, and to determine if the date and time settings are correct and if they are set to synch or not synch with the network. I know from my training and experience that it is important to understand events of a particular day and time in proper context that may exist months before certain criminal acts and to attribute particular users of a device and associated applications when the device was initially set up.

16. In order to successfully complete a forensic extraction from a mobile device, it may be necessary to repair the device, replace the display screen, replace the chassis, replace the battery, and repair or replace switches and other components that are necessary to make the device operational. It may also be necessary to employ advanced forensic processes to remove or bypass locked display screens and other data access restrictions. Advanced processes may include, but are not limited to, brute force attack methods, third party proprietary services and methods and destructive and potentially destructive processes such as gaining root and/or Super user level access and employing forensic methods.

17. The executing law enforcement officer(s) may need to enlist the aid of a specialized computer forensic laboratory and/or certified digital evidence examiner(s) in repairing, searching, viewing, photographing, recording, copying, forensic imagining, and

Case 3:22-mj-02103-JEM Document 2 Filed 06/08/22 Page 6 of 26 PageID #: 7

analysis of all of the information described.

## MANNER OF EXECUTION

18. Because this warrant seeks permission to examine only a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion into a premise. Consequently, I submit there is good cause for the Court to authorize execution of the warrant at any time day or night.

## CONCLUSION

19. I submit that this affidavit supports probable cause for a warrant to search the **SUBJECT DEVICE** described in **Attachment A** and seize the items described in **Attachment B**.

J. Wallace Bowden
Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me this 8th day of June, 2022.

JILL E. MCCOOK
United States Magistrate Judge
Eastern District of Tennessee

## ATTACHMENT A

## DEVICE TO BE SEARCHED

An Apple iPhone, white in color, which was in the possession of Tessa Hines at the time of her arrest on December 10, 2021.

## ATTACHMENT B

## ITEMS TO BE SEARCHED AND/OR SEIZED

a. Live and deleted user attribution data including, but not limited to, user accounts, e-mail accounts, passwords, PIN codes, patterns, account names, user names, screen names, remote data storage accounts, documents, files, metadata, or any other information and evidence that may demonstrate attribution to a particular user or users;

b. Live and deleted records, documents, financial transaction records and other items that may constitute evidence, contraband, fruits, and/or instrumentalities of criminal offenses, including 18 U.S.C. §§ 1341 and 2 (mail fraud and aiding and abetting in the commission of mail fraud) and 18 U.S.C. 1349 (conspiracy to commit mail fraud);

c. Live and deleted contact lists, call logs, text messages and multimedia messages (SMS an MMS messages), iMessages, e-mails, chats, video conference communication data, contact information, financial transactions, installed application information including content and any other information which can be used to identify persons potentially associated with criminal offenses, including 18 U.S.C. §§ 1341 and 2 (mail fraud and aiding and abetting in the commission of mail fraud) and 18 U.S.C. 1349 (conspiracy to commit mail fraud);

d. Live and deleted passwords, password files, PIN codes, encryption codes, or other information necessary to access the digital device or data stored on the digital device such as hidden file applications;

e. Live and deleted documents, programs, pictures, videos, audio files, text files, databases, application data, calendar entries, user dictionaries, malware, viruses, tracking or other remote monitoring software, and any associated metadata that may constitute evidence, contraband, fruits, and/or instrumentalities of criminal offenses, including 18 U.S.C. §§ 1341 and 2 (mail fraud and aiding and abetting in the commission of mail fraud) and 18 U.S.C. 1349 (conspiracy to commit mail fraud);

f. Live and deleted web browser history, web browser bookmarks, temporary Internet files, cookies, searched items, downloaded and uploaded files, social networking websites or applications that may constitute evidence, contraband, fruits, and/or instrumentalities of criminal offenses, including 18 U.S.C. §§ 1341 and 2 (mail fraud and aiding and abetting in the commission of mail fraud) and 18 U.S.C. 1349 (conspiracy to commit mail fraud);

g. Live and deleted data stored on removable media such as Subscriber Identity Modules (SIM cards), flash memory storage devices such as Secure Digital (SD) and Micro SD media cards and any associated wireless devices (Bluetooth, Wi-Fi, or other technology) that may constitute evidence, contraband, fruits, and/or instrumentalities of criminal

offenses, including 18 U.S.C. §§ 1341 and 2 (mail fraud and aiding and abetting in the commission of mail fraud) and 18 U.S.C. 1349 (conspiracy to commit mail fraud).

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

United States of America
v.
Tessa Gay N. Hines

*Defendant(s)*

Case No. 3:22-MJ-2045

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 2021 to the present in the county of Loudon in the Eastern District of Tennessee, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18:1341 and 2 | Mail Fraud |
| 18:1349 | Conspiracy to Commit Mail Fraud |

This criminal complaint is based on these facts:

See attached affidavit, which is incorporated herein by reference.

☑ Continued on the attached sheet.

J. Wallace Bowden
*Complainant's signature*

J. Wallace Bowden, Postal Inspector, USPIS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/23/2022

Jill E. McCook
*Judge's signature*

City and state: Knoxville, Tennessee

Jill E. McCook, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF J. WALLACE BOWDEN**

**United States Postal Inspection Service**

J. Wallace Bowden, being first duly sworn on oath, states as follows:

## INTRODUCTION

1. I am a Postal Inspector with the United States Postal Inspection Service and have been employed as a Postal Inspector for approximately twenty-seven years.

2. This affidavit is submitted in support of a Criminal Complaint for the arrest of Tessa G. Hines for aiding and abetting in the commission of mail fraud, in violation of Title 18, United States Code, Sections 1341 and 2, and conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 1349. Investigators with the Lenoir City Police Department (LCPD), the Deputy Attorney General for the Ninth Judicial District, the U.S. Postal Inspection Service, and other federal agencies have developed evidence showing that from in or about April 2021 through the present, in the Eastern District of Tennessee and elsewhere, Tessa Hines, Jamali Jermaine Ramsay, Jahrmarley Kiboki McFarlane, Marklyn Antonio Forrester, and Maurice Armani Brown (aka Morice Amani Brown) conspired with other persons to engage in a mail fraud scheme to steal more than $600,000 from an elderly resident of Lenoir City, Tennessee.

3. The information contained in this affidavit is based on my training and experience, my personal participation in this investigation and information provided to me by other law enforcement officials. This affidavit is intended to contain only facts sufficient to establish probable cause for the issuance of a criminal complaint and arrest warrant for Tessa Hines and does not include all of the facts known to me or to other law enforcement officers involved in the investigation.

## VICTIM

4. The victim of the offenses alleged herein is Sandra Kay Cruze, who is a resident of Lenoir City, Tennessee. At present, Ms. Cruse is 76 years old and is widowed. On October 29, 2021, she provided a sworn, written statement in which she said she had been contacted by an organization that purported to be Golden Casket International Sweepstakes and was told that she had won $3.5 million. Thereafter, she was tricked into paying multiple cash payments for what she was told were taxes and administrative expenses associated with "releasing" the prize money. Ms. Cruze told law enforcement that she has lost more than $600,000 in conjunction with this scheme.

## TARGETS

5. The following individuals, among others, are the subjects of this investigation.

a. Jahmarley Kiboki McFarlane is 22 years old and a citizen of Jamaica. McFarlane is presently in the custody of the Loudon County Sheriff's Office and is charged with (1) financial exploitation of an elderly adult (T.C.A. § 39-15-502), (2) evading arrest (T.C.A. § 39-16-603), (3) reckless endangerment with the deadly weapon (T.C.A. § 39-13-103), and (4) two counts of theft of property (T.C.A. § 39-14-103). At the time of his arrest and booking on October 22, 2021, he stated that his address is 425 SE 4th Ave., South Bay, Florida 33493.

b. Jamali Jermaine Ramsay is 19 years old and a citizen of Jamaica. Ramsay is presently in the custody of the Loudon County Sheriff's Office and is charged with (1) financial exploitation of an elderly adult (T.C.A. § 39-15-502), and (2) two counts of theft of property (T.C.A. § 39-14-103). At the time of his arrest and booking on October 22, 2021, he stated that his address is 1501 Calusa Dr., Apt. 3, Belle Glade, Florida 33430.

c. Marklyn Antonio Forrester is 25 years old and a citizen of Jamaica. Forrester is presently in the custody of the Loudon County Sheriff's Office and is charged with (1) financial exploitation of an elderly adult (T.C.A. § 39-15-502), (2) evading arrest (T.C.A. § 39-16-603), (3) aggravated assault (T.C.A. § 39-13-102), and (4) one count of theft of property (T.C.A. § 39-14-103). At the time of his arrest and booking on October 22, 2021, he stated that his address is 12089 SW 12th St., Pembrooke Pines, Florida 33025.

d. Maurice Armani Brown is 21 years old and a citizen of Jamaica. Brown is presently in the custody of the Loudon County Sheriff's Office and is charged with (1) financial exploitation of an elderly adult (T.C.A. § 39-15-502), and (2) one count of theft of property (T.C.A. § 39-14-103). At the time of his arrest and booking on October 22, 2021, he stated that his address is 12089 SW 12th St., Pembrooke Pines, Florida 33025.

e. Tessa G. Hines is 27 years old and a citizen of Jamaica. Hines is presently in the custody of the Loudon County Sheriff's Office and has been charged with facilitation of financial exploitation of an elder (T.C.A. § 39-15-502). Hines has stated that her address is 310 Rich Avenue, Mount Vernon, NY 10552.

## STATEMENT OF PROBABLE CAUSE

6. On or about July 31, 2021, Ms. Cruze received what purported to be a letter from the Golden Casket International sweepstakes [sic], which was delivered via U.S. Mail with the tracking identifier EJ418615310US. The priority mail express envelope was delivered to Ms. Cruze's home in Lenoir City, Tennessee. In addition to the purported sweepstakes letter, the envelope contained what appeared to be two checks. The first was purportedly drawn upon the account of The International Community Golden Casket with the Federal Reserve Bank in New York. It bore check number 1023, was payable to Sandra Cruze, and was drawn in the amount of $3,000,000.00. The second check was similar in all respects to the first, except it was check

number 1024 and was drawn in the amount of $200,000.00. The sweepstakes letter accompanying the checks stated that the sweepstakes winners were responsible for paying federal taxes in the amount of 32.5% of their winnings. The letter contained a schedule of fees totaling $66,800 that were to be paid by Ms. Cruze, including "Gold Seal Stamps," processing and validation, insurance charges, an "I.R.S. Processing Fee," and "Clearance Fees." Cruze was instructed to make payment to "Mr. Richard Bargansky," using an address that would be provided by telephone.

7. Ms. Cruze also received via U.S. Mail what appeared to be a letter from the "Internal Revenue Service IRS.gov." The letter, which bore an official IRS logo and the seal of the President of the United States, stated, "Dear Miss Sandra Cruze this is also a breakdown of the payment structure for your fees and taxes that are required to be paid by the recipient."

8. Ms. Cruze was subsequently contacted via telephone by one or more individuals using the names "Richard" and "Lucky Graham." "Richard" directed Ms. Cruze to mail cash as payment for taxes and fees associated with the lottery winnings. As instructed by "Richard," Ms. Cruze mailed a quantity of cash (she does not remember the amount) to Mr. Jahmarley McFarlane, 425 SE 4th Ave., South Bay, FL 33493. Upon delivery of the package, she received a Postal receipt, tracking number EJ266122274US.

9. On or about August 17, 2021, as directed by "Richard," Ms. Cruze drove to the parking lot of the Wal-Mart store in Lenoir City. While Ms. Cruze remained in her vehicle, an individual later identified as Jahmarley McFarlane approached her car and she handed him $80,000 in cash, purportedly as payment for lottery fees. As directed by "Richard," Ms. Cruze had put the cash inside of a book, which she then placed in a gift bag. Upon receiving the bag, McFarlane complimented Ms. Cruze on the packaging, congratulated her on winning the sweepstakes, and gave her a handwritten receipt.

10. On September 24, 2021, Cruze filed a report with the Lenoir City Police Department, alleging theft and financial exploitation in the amount of approximately $672,000.

11. At the time of Cruze's September 24 meeting with the LCPD, the fraudsters were demanding an additional $150,000 as the final payment of fees. Because the fraudsters had previously been willing to send "couriers" to Lenoir City to pick up cash, Cruze believed that they would do so again.

12. During an October 18, 2021 phone call, Cruze told Richard and Lucky that she had been able to borrow the $150,000. She refused to mail the cash, however, and insisted that they send a courier as they had done in August. Richard agreed to send a courier, or possibly two, to pick up the cash. He told her to separate the money into two packages, each containing $75,000.

13. On October 19, 2021, at 11:53 a.m., Richard called Cruze and told her that he would send someone to Lenoir City to pick up the money.

14. On October 19, 2021, Tessa Hines booked a flight for herself from Montego Bay, Jamaica ("MBJ") to Ft. Lauderdale, FL ("FLL"). The flight was scheduled to leave MBJ on October 20, 2021 at 5:40 p.m. Hines scheduled no return flight. The ticket she purchased did not permit her to check any baggage or to use an overhead bin on the aircraft.

15. On October 20, 2021, Hines booked a flight for her cousin, Maurice Brown, from MBJ to FLL. He was scheduled to accompany Hines on the 5:40 p.m. flight. Hines used the same credit card to buy Brown's ticket as she used to purchase her own. As with Hines, Brown's ticket did not permit him to check any baggage or use the overhead bin. Unlike Hines' travel booking, Brown's ticket provided for a return trip to MBJ on October 27, 2021.

16. On October 20, 2021 at 10 a.m., Richard called Cruze and told her that two people would be serving as couriers for the funds.

17. Hines and Brown flew from MBJ to FLL on October 20, 2021, departing at 5:44 p.m.

18. Upon arrival in FLL, Hines rented a Toyota RAV4 from Enterprise using her own credit card. The rental was a "walk up" (i.e., no reservation) on October 20, 2021 at 9:59 p.m. The car was scheduled to be returned on October 23, 2021.

19. On the morning of October 21, 2021, Richard contacted Cruze by telephone and told her that the couriers would be in Lenoir City to pick up the $150,000 the following day, on October 22, 2021.

20. At some point after obtaining the rental vehicle, Hines and Brown picked up Marklyn Forrester, Brown's nephew and Hines' occasional boyfriend. The three of them drove together from Ft. Lauderdale to Lenoir City, where they arrived late in the evening on October 21, 2021. They rented one hotel room at Days Inn for one night. They had no reservation and Hines paid for the room in cash for one night.

21. October 22, 2021, Brown and Forrester left Hines at the Days Inn and drove the RAV4 to the Walmart at Lenoir City, where Cruze was to meet with the "couriers."

22. On October 22, 2021, Ms. Cruze made her second trip to the Wal-Mart parking lot in Lenoir City, Tennessee, as directed by "Richard." This meeting between Cruze and the purported couriers was under police surveillance. In addition to having unmarked police vehicles in the area, agents had provided Ms. Cruze with audio and visual recording equipment.

23. The agents set up surveillance on October 22, 2021 at around 7 a.m. At approximately 7:39 a.m., the agents observed a Toyota RAV4, gray in color and with a Florida

license plate, move slowly through the parking lot in a manner that aroused the suspicions of the surveillance units. The Toyota then left the area. An agent on the scene ran the license plate number through a law enforcement database and found that the car was owned by Enterprise. Upon contacting Enterprise, the agent found that the car was rented to Tessa Hines, who was later determined to be the girlfriend of Forrester and the cousin of Brown.

24. After the Toyota left the area, Ms. Cruze drove to the Lenoir City Wal-Mart and parked in the parking lot. She then received a call from "Richard," who directed her to drive to the Wal-Mart location on Parkside Drive in Knoxville. She refused to do so, however, stating that she had no navigational device to help her find her way. "Richard" then said that someone would be sent to meet her at the Lenoir City location. Subsequently, the agents saw that the Toyota had returned, but had parked in front of the nearby Home Depot.

25. Shortly after the Toyota returned, agents observed a black male in the parking lot. The man was later identified as McFarlane, and he had arrived in a Nissan Altima, gray in color. Another man, later identified as Ramsay, remained in the car. McFarlane approached Ms. Cruse's vehicle and got in. He accepted the two packages from Ms. Cruze, again congratulated her on winning the sweepstakes, and gave her a handwritten receipt for $150,000, which had been written by Ramsay. When McFarlane got out of Ms. Cruze's vehicle, the agents moved in to apprehend him and McFarlane took off running. He was able to evade the police long enough to get to the Nissan. McFarlane got into the vehicle and led the police on a chase through the parking lot and onto U.S. 321 in the direction of Interstate 75. He finally crossed the road into oncoming traffic, then pulled his vehicle into Smoky Mountain Trailers, where he and Ramsay were arrested.

26. Ramsay told law enforcement officers that he was merely on a road trip with McFarlane but assumed that he would be paid. He told the agents that he believed that he

had been paid $1,000 to accompany McFarlane on his initial trip to meet Ms. Cruze on August 17, 2021. Ramsey also acknowledged writing the receipt that was provided to Ms. Cruze on October 22, 2021.

27. When the police moved in to arrest McFarlane, other agents observed the Toyota RAV4 attempting to leave the area in an evasive manner and they attempted to stop the vehicle. The Toyota's escape was thwarted, however, by a citizen whose Ford F-250 blocked the vehicle in. Upon arresting the Toyota's occupants, agents learned that Forrester had been the driver and Brown was the passenger. While the Toyota had been under surveillance earlier, agents saw that the passenger of the vehicle was using a white cellular telephone, which was taken from the vehicle at the time of his arrest. Although Forrester would not consent to the forensic examination of the telephone, agents were able to determine that there had been communications earlier in the morning between Forrester and McFarlane's phones using commercial messaging applications and between Forrester's phone and an unidentified phone number associated with "Richard." In addition, upon searching McFarlane's phone, agents found that Forrester's phone had been used by Brown to send McFarlane the location information for the Wal-Mart location on Parkside Drive in Knoxville. This communication was consistent with the Toyota having left the Lenoir City parking lot earlier and "Richard" having called Ms. Cruze to tell her that the pickup location had been changed to Parkside Drive. In addition, McFarlane's phone contained a message from Forrester's phone that told McFarlane where Ms. Cruze's vehicle was parked.

Following his arrest, Forrester told the police that he had traveled with Tessa Hines (his girlfriend and Brown's cousin) and Brown from Florida. He also told investigators that initially he had not known the reason for the trip to Lenoir City. Forrester did, however, instruct Hines to remain behind in the hotel room on the morning he and Brown were going to the Wal-Mart

parking lot, because he did not want Hines to be involved in what was happening.

28. McFarlane, Ramsay, Forrester and Brown were charged with violating T.C.A. § 39-15-502 (financial exploitation of elderly or vulnerable person), in addition to other state charges. Upon booking, McFarlane told the Loudon County Sheriff's Department that his address was 425 SE 4th Ave., South Bay, Florida. This was the same address that had been provided to Ms. Cruze as the address to which she was to mail her initial cash payment. All four of the subjects are Jamaican nationals.

29. During post-arrest interviews, agents learned that Brown and Forrester had driven to the area with Tessa Hines and had stayed in a hotel with her the evening before. Around 11:30 p.m., police picked up Hines at her hotel and she voluntarily accompanied them back to the LCPD to be interviewed.

30. During the interview, Hines claimed to have had no idea why she had accompanied Brown and Forrester on a 12-hour road trip, to an out-of-the-way city in eastern Tennessee with which none of them had any connection, in a car that she had rented, or why the three had stayed in a hotel room that she had rented. She did tell investigators, however, that when Forrester and Brown did not return to the hotel room, she made some phone calls to try to locate them. One of the first calls she made was to a bail bonding company.

31. On October 24, 2021, at approximately 8:34 a.m., Ms. Cruze received a text message from telephone number 770-824-6365 – the same number from which "Richard" had always called her. The message read, "Y you set us up with the fbi you going to pay for it, Scarface is going to come and get you." On November 3, 2021, the General Sessions Court for Loudon County, Tennessee issued a warrant for the arrest of Tessa Hines, alleging facilitation of the financial exploitation of an elderly person, in violation of T.C.A. § 39-15-502. A copy of the warrant is attached as Ex. A hereto.

32. On December 10, 2021, Hines was arrested at Newark International Airport as she was preparing to board a flight to Montego Bay, Jamaica. On or about December 20, 2021, she arrived at the Loudon County jail, where she has been in continuous custody.

33. Based upon the foregoing information, it appears that Hines, McFarlane, Ramsay, Forrester, Brown, and other unidentified persons have been engaged in a conspiracy to steal money from the victim, Sandra Kay Cruze, through a scheme and artifice to defraud perpetrated through use of the U.S. Mail and commercial carriers operating in interstate commerce.

J. Wallace Bowden
Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me this 23rd day of February, 2022.

JILL E. MCCOOK
United States Magistrate Judge
Eastern District of Tennessee

74341

No 21-CR-1897-C-1

State Control No. ____________

## STATE OF TENNESSEE

vs.

Tessa Gay N Hines

Defendant

310 Rich Avenue, Mt. Vernon, NY 10552

Defendants address

CHARGE(S): TCA: ~~45-2-1202~~ 39-15-502

Facilitation of Financial Exploitation of Elder

### INITIAL APPEARANCE DATE

____________, 20____ at ____________ AM PM

Bond set at $ ____________

Set at arraign.

Continued: ____________

Continued: ____________

Issued: 11/3 20 21

Judge - Clerk - Commissioner

Received: ____________ 20____

Sgt. Lynetta Ladd

Authorized Officer

### RETURN ON SERVICE

☐ Executed as commanded by the arrest of the defendant(s):

☐ The below defendant(s) are not to be found in this county:

Date: ____________ 20____

Sheriff-D.S.-T.H.P.-G&F-LPD-LCPD

## JUDGMENT

Judgment that the Defendant be:

☐ Dismissed and costs taxed to the ____________

☐ Fined $ ____________ and costs on a plea of ____________

☐ Defendant having failed to appear on the date set for trial, a forfeiture of cash bond is hereby ordered.

☐ Fined $ ____________ and costs on a plea of ____________ and sentenced to serve ____________ months and ____________ days in the county jail

☐ Driving privilege suspended for ____________

☐ Bound over and held to the Grand Jury of ____________ County;

Bail bond get at $ ____________

☐ Defendant, having failed to appear. issuance of an Attachment or Alias Arrest Warrant is hereby ordered.

☐ Waived preliminary hearing, bound over and held to the Grand Jury. Bail bond set at $ ____________

☐ ____________

Judge

Date: ____________ 20____

Attorney - Check if Court Appointed ☐

## WAIVERS

### 1. Grand Jury and Trial by Jury

Defendant, ____________ after being fully advised of his/her rights by the Court, in writing waives his/her rights to be tried only upon indictment or presentment by a Grand Jury and to trial by a jury of peers.

Defendant

Judge

### 2. Preliminary Examination

Defendant, ____________ hereby expressly waives in writing his/her right to a preliminary hearing.

Defendant

Judge

### 3. Right to Counsel

Defendant, ____________ after being fully advised of his/her right to the aid of counsel in every stage of the proceedings, and further having been advised that if necessary an attorney will be appointed to represent the defendant, hereby waives hi/her right to counsel.

Defendant

Judge

Exhibit A.

STATE OF TENNESSEE

# AFFIDAVIT OF COMPLAINT

Case Number 21-CR-1897

In the General Sessions Court of Loudon County C-8

DEFENDANT(S) (Name, Address)

STATE OF TENNESSEE VS. Tessa Gay N Hines
310 Rich Avenue
Mt. Vernon, NY 10552

unknown SSN

05/04/1993 D.O.B

B/F Race/Gender

The undersigned affiant, after being duly sworn according to the law, states that Tessa Gay N Hines

whose name is otherwise unknown to the affiant, committed the offense of T.C.A.: TCA: ~~45-2-1202~~ 39-15-502

Facilitation of Financial Exploitation of Elder

in the above county on or about October 22, 2021

Further, affiant makes oath that the essential facts constituting said offense, the sources of affiant's information, and the reasons why his/her information is believable concerning said facts are as follows:

On or about October 22, 2021, Tessa Gay N Hines, did commit the offense of Facilitation of the Financial Exploitation of an Elder or Vulnerable Person. The victim resides at 1798 Sharp Drive, Lenoir City, TN. The victim has been financially exploited since April 2021 and through Oct. 2021, after co-conspirators convinced her she had won the Golden Casket Sweepstakes Lottery. She paid "fees" in the amount of over $600K. The victim was told she owed $150K. She was instructed to make two packages and put $75K in each one as fees due for her winnings. The victim worked with law enforcement and arranged for someone to pick up the alleged cash at 911 Hwy 321 North, Lenoir City, TN. Four men were arrested in connection with the attempted theft of $150K and (Conspiracy) Financial Exploitation of an Elder. They were Maurice (Morice) Brown, Jahmarley McFarlane, Jamali Ramsay, and Marklyn Forrester. During the investigation we found that Hines stated that she flew from Jamaica to the United States with Maurice (Morice) Brown two days prior to the arranged pick up of $150K cash. She rented a Toyota Rav4 in her name. She then drove to Marklyn Forrester's apartment in Florida. Then the three drove from Florida to Lenoir City, TN, in the vehicle she rented, arriving after midnight on October 22, 2021. She then rented a hotel room at the Days Inn, for the three of them in her name. Hines stayed at the hotel while Forrester and Brown went to make the cash pickup. When they did not return one of the first phone numbers she called was a bail bonding company, thus making it evident that Hines knew that they were involved in something illegal.

**NOTIFICATION OF POSSIBLE EXPUNCTION OF CRIMINAL RECORDS If the defendant's charge is dismissed; a no true bill is returned by the grand jury; the defendant is arrested and released without being charged with an offense; or the court enters a nolle prosequi in the defendant's case, the defendant is entitled, upon petition by the defendant to the court having jurisdiction over the action and pursuant to T.C.A. § 40-32-101, to the removal and destruction of all public records relating to the case without cost to the defendant.**

WITNESSES:

Affiant Signature: Sgt. Lynette Ladd

Affiant Name and Address:
Sgt. Lynette Ladd
530 Hwy 321 North
Lenoir City, TN 37771

Sworn to and subscribed before me this 11/3, 2021

[signature] judge/Clerk/Commisioner

Warrant Issued: 11/3, 2021

STATE OF TENNESSEE

# ARREST WARRANT

Case Number 21-CR-1897

In the General Sessions Court of Loudon County C-4

STATE OF TENNESSEE VS. Tessa Gay N Hines

*TO ANY LAWFUL OFFICER OF THE STATE:*

Based upon the affidavit(s) of complaint made and sworn to before me by

there is probable cause to believe that the offense(s) of 45-2-1202 Facilitation of the Financial Exploitation of an Elder or Vulnerable Pe

has been committed in Loudon County, Tennessee, and charging Tessa Gay N Hines

thereof, you are therefore commanded in the name of the State of Tennessee forthwith to arrest and bring the said accused person before the Court of General Sessions of Loudon County, Tennessee, to answer the said charges.

This 3rd day of Nov., 2021

[signature] Judge-Clerk-Commissioner

M4342

No 21-CR-1897-C-2

State Control No. ___

## STATE OF TENNESSEE

vs

Tessa Gay N Hines

Defendant

310 Rich Ave, Mt. Vernon, NY 10552

Defendants address

CHARGE(S): 39-14-103

Facilitation- Attempted Theft of Property Over $60K

**INITIAL APPEARANCE DATE**

___, 20___ at ___ AM PM

Bond set at $ ___

Set at arraign.

Continued: ___

Continued: ___

Issued: 11/3 20 21

Judge -Clerk -Commissioner

Received: ___ 20___

Sgt. Lynette Ladd

Authorized Officer

**RETURN ON SERVICE**

☐ Executed as commanded by the arrest of the defendant(s):

☐ The below defendant(s) are not to be found in this county:

Date: ___ 20___

Sheriff-D.S.-T.H.P.-C&F-PD-H(PD)

## JUDGMENT

Judgment that the Defendant be:

☐ Dismissed and costs taxed to the ___

☐ Fined $ ___ and costs on a plea of ___

☐ Defendant having failed to appear on the date set for trial, a forfeiture of cash bond is hereby ordered.

☐ Fined $ ___ and costs on a plea of ___ and sentenced to serve ___ months and ___ days in the county jail

☐ Driving privilege suspended for ___

☐ Bound over and held to the Grand Jury of ___ County:

Bail bond get at $ ___

☐ Defendant, having failed to appear. issuance of an Attachment or Alias Arrest Warrant is hereby ordered.

☐ Waived preliminary hearing, bound over and held to the Grand Jury. Bail bond set at $ ___

☐ ___

Judge

Date: ___ 20___

Attorney - Check if Court Appointed ☐

## WAIVERS

**1. Grand Jury and Trial by Jury**

Defendant, ___ after being fully advised of his/her rights by the Court, in writing waives his/her rights to be tried only upon indictment or presentment by a Grand Jury and to trial by a jury of peers.

Defendant

Judge

**2. Preliminary Examination**

Defendant, ___ hereby expressly waives in writing his/her right to a preliminary hearing.

Defendant

Judge

**3. Right to Counsel**

Defendant, ___ after being fully advised of his/her right to the aid of counsel in every stage of the proceedings, and further having been advised that if necessary an attorney will be appointed to represent the defendant, hereby waives hi/her right to counsel.

Defendant

Judge

| STATE OF TENNESSEE | **AFFIDAVIT OF COMPLAINT** | Case Number 21-CR-1897 |
|---|---|---|

C-2

**In the** General Sessions **Court of** Loudon **County**

DEFENDANT(S) (Name, Address)

**STATE OF TENNESSEE VS.** Tessa Gay N Hines
310 Rich Avenue
Mt. Vernon, NY 10552

unknown SSN — 05/04/1993 D.O.B — B/F Race Gender

The undersigned affiant, after being duly sworn according to the law, states that Tessa Gay N Hines whose name is otherwise unknown to the affiant, committed the offense of T.C.A.: 39-14-103 Facilitation- Attempted Theft of Property Over $60K in the above county on or about October 22, 2021

Further, affiant makes oath that the essential facts constituting said offense, the sources of affiant's information, and the reasons why his/her information is believable concerning said facts are as follows:

On or about October 22, 2021, Tessa Gay N Hines, did commit the offense of Facilitation of Attempted Theft of Property over $60K (total $150K) The victim resides at 1798 Sharp Drive, Lenoir City, TN. The victim has been financially exploited since April 2021 and through Oct. 2021, after co-conspirators convinced her she had won the Golden Casket Sweepstakes Lottery. She paid "fees" in the amount of over $600K. This was determined to be a lottery scam. The victim was told she owed $150K. She was instructed to make two packages and put $75K in each one as fees due for her winnings. The victim worked with law enforcement and arranged for someone to pick up the alleged cash at 911 Hwy 321 North, Lenoir City, TN. Four men were arrested in connection with the attempted theft of $150K and (Conspiracy) Financial Exploitation of an Elder. They were Maurice (Morice) Brown, Jahmarley McFarlane, Jamali Ramsay, and Marklyn Forrester. During the investigation we found that Hines stated that she flew from Jamaica to the United States with Maurice (Morice) Brown two days prior to the arranged pick up of $150K cash. She rented a Toyota Rav4 in her name. She then drove to Marklyn Forrester's apartment in Florida. Then the three drove from Florida to Lenoir City, TN, in the vehicle she rented, arriving after midnight on October 22, 2021. She then rented a hotel room at the Days Inn, for the three of them in her name. Hines stayed at the hotel while Forrester and Brown went to make the cash pickup. When they did not return one of the first phone numbers she called was a bail bonding company, thus making it evident that Hines knew that they were involved in something illegal. Hines did help facilitation the financial exploitation and attempted theft of over $60K ($150K).

**NOTIFICATION OF POSSIBLE EXPUNCTION OF CRIMINAL RECORDS If the defendant's charge is dismissed; a no true bill is returned by the grand jury; the defendant is arrested and released without being charged with an offense; or the court enters a nolle prosequi in the defendant's case, the defendant is entitled, upon petition by the defendant to the court having jurisdiction over the action and pursuant to T.C.A. § 40-32-101, to the removal and destruction of all public records relating to the case without cost to the defendant.**

WITNESSES:

Affiant Signature: Sgt. Lynette Ladd

Affiant Name and Address:
Sgt. Lynette Ladd
530 Hwy 321 N
Lenoir City, TN 37771

Sworn to and subscribed before me this 11/3, 20 21
[signature] judge/Clerk/Commisioner
Warrant Issued: 11/3, 20 21

| STATE OF TENNESSEE | **ARREST WARRANT** | Case Number 21-CR-1897 |
|---|---|---|

C-2

**In the General Sessions Court of Loudon County**

**STATE OF TENNESSEE VS.** Tessa Gay N Hines

***TO ANY LAWFUL OFFICER OF THE STATE:***

Based upon the affidavit(s) of complaint made and sworn to before me by Sgt. Lynette Ladd there is probable cause to believe that the offense(s) of Facilitation- Attempted Theft of Property over $60K ($150K) has been committed in Loudon County, Tennessee, and charging Tessa Gay N Hines thereof, you are therefore commanded in the name of the State of Tennessee forthwith to arrest and bring the said accused person before the Court of General Sessions of Loudon County, Tennessee, to answer the said charges.

This 3rd day of Nov., 2021

[signature] Judge-Clerk-Commissioner